Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL V

| MARISOL VELÁZQUEZ MORGANTI Y MARCIAL VALENTÍN LUGO<br><br>Recurrente<br><br>v.<br><br>MÁXIMO SOLAR INDUSTRIES, INC.; SUNRUN PR OPERATIONS, LLC<br><br>Recurrida | KLRA202400659 | Revisión Judicial Procedente del Departamento de Asuntos del Consumidor<br><br>Querella Núm.: SAN-2023-0013583<br><br>Sobre: Ley Núm. 5 de 23 de abril de 1973 (Ley Orgánica de DACO) |

Panel integrado por su presidente el Juez Hernández Sánchez, el Juez Bonilla Ortiz y la Jueza Mateu Meléndez.

Mateu Meléndez, Jueza Ponente.

## SENTENCIA

En San Juan, Puerto Rico, a 24 de enero de 2025.

El 2 de diciembre de 2024, la Sra. Marisol Velázquez Morganti y el Sr. Marcial Valentín Lugo (en adelante, parte recurrente) comparecieron ante este Tribunal de Apelaciones mediante un *Recurso de Revisión Administrativa*. En este, solicitaron la revocación de la *Resolución* emitida el 24 de septiembre de 2024, por el Departamento de Asuntos del Consumidor (en adelante, DACo) notificada al día siguiente. Por virtud del aludido dictamen, el DACo determinó que lo reclamado en la *Querella* era un asunto que se tenía que atender bajo la cláusula de arbitraje pactada entre las partes. En consecuencia, desestimó la *Querella* y ordenó el cierre y archivo del caso.

Estudiado el legajo apelativo y conforme al derecho que más adelante exponemos, **confirmamos** la determinación recurrida.

I.

El 25 de enero de 2023, la Sra. Marisol Velázquez Morganti (en adelante, señora Velázquez) presentó ante el DACo un *Formulario de*

Número Identificador

SEN2025 _____

*Presentación de Querella General* contra Máximo Solar Industries, Inc. y Sunrun PR Operations.[1] Indicó allí que un vendedor de Máximo Solar Industries, Inc. (en adelante Máximo Solar) visitó su hogar para realizar un estudio de energía, realizó un estudio de empírica con el propósito de instalar placas solares y les notificó que no cumplían con la mínima requerida para instalar las placas solares.

Según alegó la señora Velázquez, varias semanas después el vendedor se comunicó con el señor Valentín y le notificó que obtuvo autorización de su gerente y, a modo de excepción, iban a instalar las placas. No obstante, también el vendedor le dijo tenían que firmar el contrato el mismo día de la instalación. La señora Velázquez sostuvo que su esposo le notificó al vendedor que la factura de luz no era correcta, pues existía un problema con el contador y necesitaban cambiarlo. Enfatizó, que el vendedor insistió en que tenían que firmar el contrato ese día o perderían la oportunidad de instalar las placas.

Asimismo, en la *Querella* se esbozó que el vendedor le notificó que las 15 placas a instalarse cubrirían 2 aires acondicionados, 2 neveras, el refrigerador y las luces de la casa. No así, la estufa, el aire ubicado en el comedor y el calentador eléctrico. También, se resaltó que el señor Valentín insistió en explicar lo que deseaba que las placas cubrieran. La señora Velázquez reclamó que, habiéndose otorgado el contrato y realizado la instalación, recibió facturas altas por el servicio de luz (de $320.00 a $380.00). Indicó que, ante esta situación se comunicó con LUMA Energy (en adelante, LUMA) y que en dicha ocasión se le notificó que la factura era correcta. Al respecto, la señora Velázquez expuso que se comunicó con el

---

[1] Es menester señalar que, si bien la Querella fue originalmente sometida solo por la señora Velázquez, el 12 de junio de 2023, está presentó una *Moción Informativa y Para Incluir Querellante* a los fines de incluir al Sr. Marcial Valentín Lugo (en adelante, el señor Valentín) y a la sociedad legal de gananciales compuesta por ambos. El 5 de julio de 2023, el DACo emitió en el caso una *Enmienda a Querella* y una *Notificación de Enmienda* a los fines de incluir al señor Valentín como parte querellante.

vendedor, quien informó- sin realizar un estudio de energía- que la situación con la factura no era su responsabilidad y que necesitaban instalar quince (15) placas adicionales. Alegó ella que, los actos de Máximo Solar constituían prácticas engañosas de venta, por lo que procedía la instalación de quince (15) placas adicionales y se enmendara el contrato. En la alternativa, solicitó la remoción de las placas instaladas y la cancelación del contrato.

El 13 de marzo de 2023, el DACo emitió la correspondiente *Notificación de Querella*. Posteriormente, el 19 de abril de 2025, la señora Velázquez presentó su *Moción Solicitando Representación Legal y Solicitando Anotación de Rebeldía y Vista*. En esencia, adujo había vencido el término para que la parte recurrida presentara su contestación a la *Querella*, por lo que procedía la anotación de rebeldía y señalar fecha para la vista administrativa.

El 25 de abril de 2023, Máximo Solar presentó una *Moción Asumiendo Representación Legal Solicitud de Desestimación por Falta de Jurisdicción*. En primer lugar, planteó que, la parte recurrente otorgó un contrato con Sunrun sobre compraventa de energía, por lo que no tenía una relación contractual con Máximo Solar. De la misma forma, indicó que el contrato tenía una cláusula de arbitraje, por lo que el DACo carecía de jurisdicción para atender la controversia. Enfatizó que, conforme a la Ley Núm. 57-2014 intitulada *Ley de Transformación y Alivio Energético*, 22 LPRA sec. 1051 *et seq*, el Negociado de Energía de Puerto Rico (en adelante, Negociado) era quien tenía jurisdicción primaria exclusiva en el pleito. Ello así, puesto que Sunrun era una compañía de energía certificada y la controversia trataba sobre un consumidor conectado al servicio de energía eléctrica.

Posteriormente, el 8 de noviembre de 2023, la parte recurrente presentó *Moción Informativa y Solicitud de Orden a Parte Querellada*. En síntesis, allí informó al DACo que se celebraron varias vistas mediación

informal, más no lograron un acuerdo que fuera beneficioso para las partes. Por esto, solicitó retirar las placas solares y la batería existente. Además, solicitó se dejara sin efecto el contrato de financiamiento otorgado con Sunrun. Por su parte, el 4 de abril de 2024, el DACo emitió una *Orden de Mostrar Causa* en la que señaló que de un examen del expediente se desprendía que el contrato suscrito entre las partes contenía una cláusula de arbitraje que disponía cuál era el foro con jurisdicción sobre la materia. Por lo tanto, ordenó a la parte recurrente a mostrar causa por la cual no debía desestimar la *Querella* por carecer de jurisdicción.

Conforme ordenado, el 25 de abril de 2024, la parte recurrente presentó su *Moción en Cumplimiento de Orden de Mostrar Causa*. En esencia, arguyó que el DACo tenía jurisdicción para atender querellas relacionadas a servicios de placas solares, siempre que dichas reclamaciones no incluyeran alegaciones sobre aspectos de jurisdicción primaria del Negociado. Enfatizó que, el caso de epígrafe trataba sobre la provisión de un servicio de placas fotovoltaicas que no cumplían con el servicio para la cuales fueron adquiridas. Entiéndase, que la *Querella* trataba sobre prácticas comerciales de Máximo Solar, por lo que el DACo tenía jurisdicción para atender la controversia. De igual forma, esbozó que, al momento de firmar el contrato, no fue asesorada referente a la cláusula de arbitraje, ni se le informó cuáles eran las implicaciones de la cláusula de arbitraje. Añadió en cuanto a esto, que el día que instalaron dicho sistema, el vendedor estaba apurado debido a que era el último día para obtener la oferta.

De otra parte, esbozó que el DACo tenía jurisdicción para atender todas las reclamaciones de los consumidores con relación al incumplimiento contractual por productos o servicios que no fueron entregados según acordado. Por último, destacó que firmó el contrato a través del mecanismo de tabletas electrónicas y, ello no era un mecanismo adecuado para realizar las divulgaciones correspondientes al contrato

otorgado entre las partes. Por lo tanto, reiteró que el DACo tenía jurisdicción para atender la controversia de epígrafe y, procedía dejar sin efecto la cláusula de arbitraje.

El 24 de septiembre de 2024, el DACo emitió la determinación recurrida en la que desestimó la *Querella* y ordenó el cierre y archivo de esta. Allí, el DACo afirmó que la parte recurrente solicitó la instalación de placas adicionales a los fines de compensar productividad y rendimiento sin tener que realizar un pago adicional. De igual forma, determinó que la reclamación estaba relacionada a un descontento o malestar respecto a la producción o funcionamiento del sistema de placas solares y vicios en el consentimiento prestado en el contrato. Así pues, concluyó que la parte recurrente no impugnaba la presunción de validez de la cláusula de selección de foro. Por otra parte, razonó que la validez y aplicabilidad de una cláusula de selección de foro era un asunto que se debía atender previo a examinar la validez del contrato, pues su propósito era que las partes dilucidaran las controversias en el foro elegido por estas en el contrato.

Asimismo, el DACo destacó que las alegaciones y los remedios solicitados por la parte recurrente se encontraban dentro del ámbito de lo que era arbitrable, según dicha cláusula. Conforme lo anterior, coligió que lo reclamado en la *Querella* era un asunto que se tenía que atender bajo la cláusula de arbitraje del contrato. En consecuencia, determinó que la agencia estaba impedida de atender los méritos de la *Querella*.

En desacuerdo con lo resuelto, el 15 de octubre de 2024, la parte recurrente presentó *Moción Solicitando Reconsideración* en la cual reiteró sus argumentos iniciales. Además, planteó que firmó un contrato de adhesión, por lo que la cláusula de arbitraje tenía que interpretarse a su favor. Por otra parte, manifestó que conforme a la *Interpretación 2022-03 para Aclarar Aspectos Jurisdiccionales del Foro Adjudicativo del DACO Respecto a los Comercios que Ofrecen Servicios de Venta, Instalación y/o Mantenimiento de*

*Sistemas de Placas Solares* (en adelante, Interpretación 2022-03), era el DACo quien tenía jurisdicción para atender querellas relacionadas a la instalación de paneles solares, siempre que las alegaciones no fueran relacionadas a la jurisdicción primaria del Negociado. Finalmente, adujo que la cláusula de arbitraje no era válida por haber sido negociada mediando fraude o engaño. El DACo no atendió dicha moción.

Inconforme aún, oportunamente la parte recurrente instó el recurso de epígrafe, en el que le imputó al DACo la comisión de los siguientes errores:

> Erró el Departamento de Asuntos del Consumidor (DACo) al otorgarle validez a la cláusula de arbitraje redactada en el contrato.
>
> Erró el Departamento de Asuntos del Consumidor (DACo) al concluir que las partes contratantes, llegaron a un acuerdo de voluntades necesario para consentir a la cláusula de arbitraje redactada en el contrato.
>
> Erró el Departamento de Asuntos del Consumidor (DACo) al concluir que carece de jurisdicción para atender la controversia presentada en la querella debido a que las partes suscribieron un contrato que contiene una cláusula de arbitraje.
>
> Erró el Departamento de Asuntos del Consumidor (DACo) al desestimar y ordenar el cierre y archivo de la Querella por carecer de jurisdicción para atender la controversia presentada en la querella debido a que las partes suscribieron un contrato que contiene una cláusula de arbitraje.

El 5 de diciembre de 2024, emitimos *Resolución* en la que concedimos a la parte recurrida un término de treinta (30) días para presentar su alegato. En cumplimiento, el 18 de diciembre de 2024, Máximo Solar presentó su *Alegato en Oposición a Solicitud de Revisión de Decisión Administrativa*. Mediante esta, reiteró que no eran parte del contrato y, que el DACo carecía de jurisdicción, puesto que las partes pactaron una cláusula de arbitraje.

Con el beneficio de la comparecencia de las partes, damos por sometido el asunto, exponemos el derecho aplicable y resolvemos.

## II.

### A.

La jurisdicción es el poder o autoridad con el que contamos los tribunales para considerar y decidir los casos y controversias que nos son presentados ante nuestra consideración. Beltrán Cintrón et al. v. ELA et al., 2020 TSPR 26, 204 DPR 89, 101 (2020); Torres Alvarado v. Madera Atiles, 202 DPR 495, 499-500 (2019). En Puerto Rico, aun cuando los tribunales poseemos jurisdicción general, adquirimos autoridad para entender sobre los asuntos judiciales por virtud de ley. Por tanto, no la podemos atribuir ni las partes no las pueden otorgar.

Acorde con la norma imperante, estamos emplazados a ser fieles guardianes de nuestra jurisdicción y carecemos de discreción para asumirla donde no la hay. Allied Mgmt. Group v. Oriental Bank, 2020 TSPR 52, 204 DPR 374, 386 (2020); S.L.G. Szendrey-Ramos v. F. Castillo, 169 DPR 873, 882 (2007). Por ende, las cuestiones relativas a la jurisdicción pueden considerarse *motu proprio* o a petición de parte, en cualquier etapa de los procedimientos, incluso en la apelativa. Rosario Domínguez v. ELA, 198 DPR 197, 206 (2017); Ríos Martínez, Com. Alt. PNP v. CLE, 196 DPR 289 (2016).

La ausencia de jurisdicción no es susceptible de ser subsanada e incide de forma consustancial con la autoridad que nos ha sido conferida para atender en los méritos una controversia o un asunto sobre un aspecto legal. Allied Mgmt. Group v. Oriental Bank, supra; Peerless Oil v. Hermanos Pérez, 186 DPR 239, 250-251 (2012). De esa forma, si al hacer el análisis jurisdiccional, concluimos, que carecemos de jurisdicción para adjudicar la cuestión ante nuestra consideración, tenemos el deber de así declararlo y proceder con la desestimación del recurso apelativo.

*B.*

El contrato es el negocio jurídico bilateral por el cual dos o más partes expresan su consentimiento en la forma prevista por la ley, para crear, regular, modificar o extinguir obligaciones.[2] En este, las partes pueden acordar cualquier cláusula que no sea contraria a la ley, la moral o al orden público.[3] Los acuerdos establecidos en el contrato tendrán fuerza de ley entre las partes.[4] Estos pactos, se perfeccionan por el mero consentimiento y desde ese momento cada una de las partes está obligada a cumplir con lo expresamente pautado y sus consecuencias. 31 LPRA Sec. 9771; Aponte Valentín v. Pfizer Pharmaceuticals, LLC., 208 DPR 263, 286 (2021).

Para que un contrato sea válido, deben concurrir tres elementos esenciales, a saber: (1) consentimiento de los contratantes; (2) un objeto cierto que sea material del contrato; y la causa de la obligación que se establezca. *Íd.*, a la pág. 284. El consentimiento prestado puede ser nulo cuando ha sido prestado por error, violencia, intimidación o dolo. Bosques vs. Echevarría, 162 DPR 830 (2004). Ahora, es importante conocer que no todo tipo de dolo produce la nulidad del contrato. Así pues, el dolo incidental no invalida el negocio jurídico, pero su autor debe indemnizar el daño causado.[5] Para que el dolo cause la nulidad del contrato, deberá ser grave[6] y no puede haber sido empleado por las dos partes contratantes. Bosques vs. Echevarría, *supra*.

*C.*

Como regla general, nuestro ordenamiento jurídico permite que las partes en un contrato se obliguen al arbitraje de las posibles controversias relacionadas con su contrato. A tenor con esto, el Artículo 1 de la Ley Núm.

---

[2] Artículo 1230 del Código Civil de Puerto Rico de 2020, 31 LPRA Sec. 9751.
[3] 31 LPRA Sec. 9753.
[4] 31 LPRA Sec. 9751.
[5] 31 LPRA, Sec. 6213.
[6] Dolo grave, es "la acción u omisión intencional por la cual una parte o un tercero inducen a otra parte a otorgar un negocio jurídico que de otra manera no hubiera realizado. 31 LPRA Sec. 6211.

376 de 8 de mayo de 1951, también conocida como la *Ley de Arbitraje Comercial en Puerto Rico* (Ley de Arbitraje), 32 LPRA sec. 3201[7], establece que dos o más partes podrán convenir por escrito para someter a arbitraje cualquier controversia que sea objeto de una acción existente entre ellas a la fecha del convenio, o cualquier controversia que pudiese surgir entre las partes suscribientes en el futuro. Asimismo, el Artículo añade que estos convenios serán válidos, exigibles, e irrevocables, salvo por los fundamentos que existen en derecho para la revocación de cualquier convenio.

Por otro lado, el Artículo 4 de la precitada ley establece que cualquiera de las partes que alegue la negligencia o negativa de otra a proceder a un arbitraje, de conformidad con el convenio, podrá solicitar al Tribunal una orden para obligar a las partes a proceder al arbitraje convenido.

Cónsono con lo anterior, en Puerto Rico existe una fuerte política pública a favor del arbitraje, por lo que toda duda con respecto a si procede debe resolverse en la afirmativa. Paine Webber, Inc. v. Soc. de Gananciales, 151 DPR 307, 312-313 (2000). Sin embargo, el arbitraje convencional es exigible sólo cuando se ha pactado por escrito. Municipio Mayagüez v. Lebrón, 167 DPR 713 (2006). Por ello, al momento de determinar si una controversia es arbitrable, los Tribunales deben observar si el propio convenio establece ciertos tipos de disputas específicas que se verán en arbitraje, o si excluye algunas controversias en particular. *Íd.* Lo anterior responde a que, al ser el arbitraje un asunto contractual, no se puede obligar a una parte a someter a arbitraje una controversia que no acordó someter. H.R., Inc. v. Vissepó & Diez Constr., 190 DPR 597, 605 (2014).

---

[7] La *Ley de Arbitraje Comercial en Puerto Rico* fue derogada por la Ley Núm. 147-2024 intitulada *Ley de Arbitraje de Puerto*. No obstante, el derecho vigente al momento de la firma del contrato en controversia y la presentación de la *Querella* era la Ley de Arbitraje de 1951.

En lo pertinente a la controversia ante nuestra consideración, el Tribunal Supremo de Puerto Rico resolvió que el fraude y engaño relacionado a un contrato en general no invalida una cláusula de selección de foro contenida en el mismo. Bobé *et al*. v. UBS Financial Services, 198 DPR 6, 23 (2017). Específicamente, determinó que, para invalidar una cláusula de selección de foro, la parte debe demostrar que la cláusula fue incluida [en el contrato] mediando fraude o engaño y no aquel relacionado al contrato en general. *Íd.* A esos efectos, e Tribunal Supremo concluyó lo siguiente:

> [N]o bastará con alegar que el contrato en general se suscribió con esos medios (fraude o engaño), sino que habrá que demostrar que la cláusula de selección de foro se introdujo al contrato mediante fraude o engaño. De lo contrario, la cláusula mantiene su vigencia y las controversias que surjan del contrato, incluyendo las alegaciones de fraude en la contratación, se deberán adjudicar en el foro acordado. *Íd.*, págs. 23 y 24.

*D.*

Es norma hartamente conocida y reiterada en nuestro ordenamiento jurídico que los foros apelativos deben conceder amplia deferencia a las decisiones administrativas debido a la experiencia y pericia que estos organismos, presumiblemente tienen respecto a las facultades que se les han delegado. Otero Rivera v. Bella Retail Group, Inc., 2024 TSPR 70, 213 DPR ____, al citar a Graciani Rodríguez v. Garage Isla Verde, 202 DPR 117, 126 (2019) y Rolón Martínez v. Supte. Policía, 201 DPR 26, 35 (2018).[8]

La competencia de este Tribunal de Apelaciones para revisar las actuaciones administrativas está contemplada en la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), Ley 38-2017, 3 LPRA Sec. 9601, *et seq*. A tales efectos, la Sección 4.1 de la LPAU

---

[8] Reconocemos que recientemente el Tribunal Supremo Federal emitió una decisión en la que cuestionó gran parte de la jurisprudencia que dirige el proceso de revisión judicial que efectúan los tribunales sobre las decisiones administrativas. Particularmente, en cuanto a la deferencia que estas merecen al interpretar un estatuto ambiguo. Véase Loper Bright Enterprises et al., v. Raimondo, 603 US ____ (2024), 144 S. Ct. 2444. No obstante, es nuestro parecer que las circunstancias particulares del caso ante nuestra consideración no requieren que profundicemos sobre los fundamentos consignados en la mencionada decisión.

dispone sobre la revisión judicial que las disposiciones de dicha ley serán aplicables a aquellas órdenes, resoluciones y providencias adjudicativas finales dictadas por agencias, las que serán revisadas por el Tribunal de Apelaciones mediante Recurso de Revisión.[9] Por su parte, la Sección 4.2 de la LPAU establece que la parte adversamente afectada por una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente podrá presentar una solicitud de revisión dentro de treinta (30) días contados a partir de la fecha de archivo en autos de la notificación de la orden o resolución final.[10]

La revisión judicial permite a los tribunales garantizar que las agencias administrativas actúen dentro de los márgenes de las facultades que le fueron delegadas por ley. Capote Rivera v. Voili Voila Corporation, 2024 TSPR 29, 213 DPR ____, al citar a Comisión Ciudadanos v. G.P. Real Property, 173 DPR 998, 1015 (2008). Al ejercer la revisión judicial, los tribunales no pueden descartar de forma absoluta la determinación de una agencia, sino que primero tienen que examinar la totalidad del expediente y determinar si la interpretación de la agencia representó un ejercicio razonable de su discreción administrativa, así fundamentado en la pericia particular de esta, en consideraciones de política pública o en la apreciación de la prueba. *Íd.*, al citar a Otero v. Toyota, 163 DPR 716, 729 (2005). Ello así, puesto a que las determinaciones de los organismos administrativos están revestidas de una presunción de regularidad y corrección por su vasta experiencia y conocimiento especializado y, conforme ya citamos, merecen deferencia por parte de los foros judiciales. *Íd.*

Ahora, la deferencia antes mencionada no es absoluta. Capote Rivera v. Voili Voila Corporation, *supra.* Así pues, los tribunales no pueden, bajo

---

[9] 3 LPRA Sec. 9671
[10] 3 LPRA Sec. 9672.

el pretexto de deferencia a las determinaciones administrativas, imprimirle un sello de corrección a aquellas interpretaciones administrativas que sean irrazonables, ilegales o contrarias a derecho. *Íd.,* al mencionar a Graciani Rodríguez v. Garage Isla Verde, *supra* a la pág. 127. Por ello, la deferencia a las decisiones administrativas debe ceder cuando: (1) la decisión no está basada en evidencia sustancial; (2) el organismo administrativo ha errado en la aplicación o interpretación de las leyes o reglamentos;(3) ha mediado una actuación arbitraria, irrazonable o ilegal, o (4) la actuación administrativa lesiona derechos constitucionales fundamentales. Super Asphalt v. AFI y otro, 206 DPR 803, 819 (2021).

## III.

Mediante el recurso de epígrafe, la parte recurrente nos invita a determinar que la decisión recurrida es contraria a derecho. Específicamente, al discutir de forma conjunta los primeros 2 errores señalados, argumenta que el DACo erró al otorgarle validez a la cláusula de arbitraje redactada en el contrato. Con dicho propósito, expone que de las alegaciones surge que no se les permitió revisar el contrato al momento de suscribirlo y que desconocían y no fue advertida de la implicación de un arbitraje. Según la parte recurrente, el DACo debió indagar acerca de la validez del consentimiento prestado, el cual alegó estuvo viciado ya que se le había representado que el sistema instalado cumpliría las necesidades de energía de la familia.

La parte recurrente reclama que la cláusula de arbitraje es inválida, pues fue negociada mediante fraude o engaño. En apoyo a dicho argumento, cita de forma persuasiva cierta resolución emitida por el Negociado de Energía de Puerto Rico el 15 de febrero de 2020 en la que dicho cuerpo determinó que Sunnova Energy Corporation no hizo las divulgaciones y advertencias adecuadas a los consumidores de forma tal que estos tomaran una decisión informada. Basándose en ello, insistió en

que el DACo debió analizar la validez de la cláusula de arbitraje o si se configuraba en el caso alguno de los criterios que la jurisprudencia dispone para decretar su nulidad.

De igual forma, al discutir conjuntamente su tercer y último error, la parte recurrente expone que el DACo cuenta con jurisdicción para atender querellas relacionadas a servicios de paneles o placas solares, siempre que estas no contentan alegaciones que giren en torno a aspectos de jurisdicción primaria del Negociado de Energía de Puerto Rico. Tras esto, reitera la nulidad de la cláusula de arbitraje por mediar fraude o engaño e insisten en que la querella trata de las prácticas comerciales de la parte recurrida; asunto sobre el cual el DACo sí tiene jurisdicción. Por todo esto, arguye que el DACo incidió al desestimar y ordenar el cierre y archivo de la *Querella* por carecer de jurisdicción, debido a que las partes suscribieron un contrato que contenía una cláusula de arbitraje.

Máximo Solar, por su parte, al defender la desestimación y el archivo de la *Querella*, reproduce los argumentos levantados ante el DACo en cuanto a que no era parte del contrato, así como que el DACo carecía de jurisdicción por haberse pactado el arbitraje.

Debido a que los errores señalados por la parte recurrente se relacionan entre sí, los discutiremos en conjunto. Previo a hacerlo, estimamos importante mencionar que, según arriba citamos, nuestro ordenamiento jurídico permite que las partes en un contrato se obliguen al arbitraje de las posibles controversias relacionadas con su contrato. Asimismo, destacamos que en Puerto Rico existe una fuerte política pública a favor del arbitraje.

Dicho esto, cabe precisar que en el presente caso no existe controversia sobre el hecho de que el contrato suscrito entre las partes contiene una cláusula de arbitraje. Es también incontrovertido el hecho de que, mediante este, las partes pactaron dilucidar cualquier tipo de

controversia, salvo ciertas excepciones. Conforme surge del expediente, dicho contrato fue firmado en todas sus partes por la señora Velázquez el 30 de marzo de 2021. La cláusula del contrato que rige la resolución de disputas lee como a continuación transcribimos:

11. **Resolución de disputas; Arbitraje, Renuncia a la demanda colectiva**

Esta Sección establece el procedimiento para resolver las disputas relevantes al Contrato (la "Disputa"). A menos que se acuerdo lo contrario por escrito, las Partes aceptan continuar cumpliendo con las obligaciones correspondientes de cada Parte establecidas en el Contrato mientras se resuelve la Disputa.

a. RESOLUCIÓN INFORMAL DE DISPUTAS: Las partes aceptan intentar primero resolver cualquier Disputa de manera informal de buena fe. […]

b. ARBITRAJE: SI LAS PARTES NO PUEDEN RESOLVER LA DISPUTA DE MANERA INFORMAL, LA DISPUTA, **INCLUYENDO LA DETERMINACIÓN DEL ALCANCE O LA APLICABILIDAD DE ESTE ACUERDO DE ARBITRAJE,** SE DETERMINARÁ MEDIANTE ARBITRAJE VINCULANTE ANTE UN ÁRBITRO. EL ARBITRAJE SERA EL ÚNICO MEDIO DE RESOLUCIÓN DE CONTROVERSIAS, SALVO QUE UNA DE LAS PARTES TENGA PERMITIDO PRESENTAR UNA RECLAMACIÓN ANTE UN TRIBUNAL QUE ENTIENDE EN CAUSAS MENORES (EN TANTOY EN CUANTO EL MONTO CONTROVERTIDO SEA MENOR QUE EL LÍMITE DE RECLAMACIÓN PARA ESE TRIBUNAL) EN LUGAR DE SOMETERSE A ARBITRAJE, SIEMPRE QUE ESE TRIBUNAL TENGA COMPETENCIA SOBRE LA CONTROVERSIA, Y LA CONTROVERSIA SEA EXCLUSIVAMENTE EN SU NOMBRE Y NO EN NOMBRE DE OTRA PERSONA. SI LA CONTROVERSIA SE TRANSFIERE A OTRO TRIBUNAL O SE APELA ANTE OTRO TRIBUNAL EN CUALQUIER MOMENTO, SUNRUN SE RESERVA EL DERECHO DE OPTAR POR QUE LA CONTROVERSIA SE RESUELVA POR ARBITRAJE, CONFORME AQUI SE ESTIPULA.

**EL ARBITRAJE IMPLICA QUE USTED RENUNCIA A SU DERECHO DE JUICIO POR JURADO Y QUE TODAS LAS DISPUTAS SERAN DECIDIDAS POR UN ÁRBITRO.** ESTE ACUERDO PARA ARBITRAR LAS DISPUTAS ESTA REGIDO POR LA LEY FEDERAL DE ARBITRAJE (FEDERAL ARBITRATION ACT, "FAA"). EL ARBITRAJE SERÁ ADMINISTRADO POR JAMS DE CONFORMIDAD CON SUS REGLAS Y PROCEDIMIENTOS DEL ARBITRAJE SIMPLIFICADO. EL ARBITRAJE ESTARÁ A CARGO DE LA OFICINA DE JAMS MÁS CERCANA AL HOGAR. LA SENTENCIA SOBRE LA DECISIÓN PODRÁ SER PRESENTADA EN CUALQUIER TRIBUNAL QUE TENGA JURISDICCIÓN. ESTA CLÁUSULA NO IMPIDE QUE LAS PARTES PRETENDAN MEDIDAS PROVISIONALES PARA CONTRIBUIR AL ARBITRAJE POR PARTE DE UN TRIBUNAL QUE TENGA JURISDICCIÓN COMPETENTE. EL ÁRBITRO PODRÁ, EN EL LAUDO, ASIGNAR LA

TOTALIDAD O PARTE DE LOS COSTOS DEL ARBITRAJE, INCLUIDOS LOS HONORARIOS DEL ÁRBITRO Y LOS HONORARIOS RAZONABLES DE ABOGADOS DE LA PARTE VENCEDORA.

SIN PERJUICIO DE DISPOSICIÓN EN CONTRARIO DE ESTA SECCIÓN O ESTE CONTRATO, LO ESTIPULADO EN ESTE CONTRATO NO TIENE LA INTENCIÓN DE OBSTACULIZAR O RESTRINGIR SU CAPACIDAD DE SOLICITAR ASISTENCIA DE LA COMISIÓN DE ENERGÍA DE PUERTO RICO (PUERTO RICO ENERGY BUREAU) PARA REVISAR LAS FACTURAS O RESOLVER LAS CONTROVERSIAS EN VIRTUD DE LOS ARTÍCULOS 6.4 Y 6.27 DE LA LEY DE TRANSFORMACIÓN Y ALIVIO ENERGÉTICO DE PUERTO RICO, Y SUS REFORMAS (LEY DE PUERTO RICO 57-2014).

La transcrita cláusula claramente establece que las partes se comprometen primeramente a resolver cualquier disputa de forma informal y que, de no lograrse un acuerdo, la misma deberá ser resuelta mediante arbitraje vinculante ante un árbitro. Asimismo, es patente que allí también se establece que a través de dicho procedimiento se debe determinar el alcance de la cláusula de arbitraje **y su aplicabilidad**.

La parte recurrente impugna la validez de la transcrita cláusula y, con tal fin, alega que las actuaciones de la recurrida constituían prácticas engañosas de venta y, que el contrato otorgado no era válido, puesto que fue negociado mediando fraude o engaño. Particularmente, la parte recurrente esboza que carecía de conocimiento sobre la cláusula de arbitraje, que no fue asesorada al respecto al firmar el contrato y, que no tuvo oportunidad de leer dicha cláusula, debido a que el vendedor que visitó su hogar estaba apurado e insistente en llevar a cabo la venta del sistema.

No obstante, según la jurisprudencia citada en el acápite -II- de esta Sentencia, el fraude y engaño relacionado a un contrato en general no invalida una cláusula de selección de foro. A esos efectos, colegimos que en el presente caso los señalamientos de fraude y engaño que reclama la parte recurrente se refieren al contrato en general. En estas circunstancias, la

cláusula de arbitraje se presume válida y las alegaciones de fraude y engaño en la contratación deberán ser resueltas por el foro pactado en el contrato.

Siendo ello así, nos resulta claro que la controversia planteada por la parte recurrente ante el DACo debió ser dilucidada como fue acordado; mediante el proceso de arbitraje.[11] Por ello, determinamos que la actuación del DACo no fue arbitraria, irrazonable, ilegal o contraria a derecho. Por el contrario, la agencia administrativa actuó correctamente al concluir que carecía de jurisdicción para atender la controversia levantada por la parte recurrente en la *Querella* y desestimar la misma. Ello pues el contrato suscrito por las partes establece la selección de un proceso y foro particular para la resolución de cualquier disputa que surja entre estas e inclusive, sobre su alcance y aplicabilidad.

Consideramos importante establecer que la decisión que hoy emitimos no deja a la parte recurrente desprovista de remedios para ventilar su reclamación ante los tribunales de Puerto Rico. Esto es así ya que, la cláusula de arbitraje del contrato dispone que, "la sentencia sobre la decisión podrá ser presentada en cualquier tribunal que tenga jurisdicción". Por tanto, si la parte recurrente no resulta favorecida en el proceso de arbitraje, podrá apelar dicha determinación ante este Tribunal de Apelaciones.

IV.

Por las consideraciones antes expuestas, **confirmamos** la decisión administrativa recurrida.

---

[11] Tampoco pasa por desapercibido, el que en la arriba transcrita cláusula, se explica que el arbitraje implica la renuncia al derecho a juicio y que todas las disputas deberán ser decididas por un árbitro. Opinamos que su lenguaje advierte sobre sus implicaciones, pues explica en cierta medida la consecuencia del arbitraje. **Ahora, tal opinión no es, ni debe interpretarse como una determinación automática a ser emitida por este Tribunal de Apelaciones al atender polémicas similares a la de auto. Ello así, pues la resolución de cualquier controversia relacionada a una cláusula de arbitraje debe efectuarse de conformidad con las circunstancias particulares presentes caso a caso.**

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.  El Juez Bonilla Ortiz está conforme con la Sentencia de este Tribunal.  Expresa, sin embargo, que en un futuro caso con otros hechos más concretos y bien elaborados, se podría volver a considerar si la parte afectada realmente tuvo la ocasión de contratar sin la inclusión de la cláusula de arbitraje y si la política pública de velar adecuadamente por los intereses del consumidor debe prevalecer sobre la política pública de fomentar el arbitraje como método alternativo a la litigación ordinaria.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones